IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| SCALEFACTOR, INC., | § | |
| Plaintiff, | § § § | |
| v. | § § | 1:19-CV-229-RP |
| PROCESS PRO CONSULTING, LLC; ADAM SHARROW; and ANDREW MILLET; | § § § § | |
| Defendants. | § § | |

## ORDER

Before the Court is a partial motion to dismiss filed by Defendants Process Pro Consulting, LLC ("Process Pro"); Adam Sharrow ("Sharrow"); and Andrew Millet ("Millet") (together, "Defendants"). (Dkt. 17). Having considered the parties' submissions, the record, and the applicable law, the Court will grant the motion in part.

## I. BACKGROUND

Sharrow and Millet were employees of Plaintiff ScaleFactor, Inc. ("ScaleFactor") who left to start their own business, Process Pro. ScaleFactor alleges that Sharrow and Millet copied, deleted, or destroyed company data before forming a competing business in violation of their non-competition agreements. (Compl., Dkt. 1, at 4–22). ScaleFactor also alleges that at Process Pro, Sharrow and Millet are using ScaleFactor's trade secrets. (*Id.*). Finally, ScaleFactor alleges that because Sharrow and Millet exercised their ScaleFactor stock options while in violation of their stock-option agreements, ScaleFactor is entitled to rescind the stocks they bought. (*Id.*).

Out of these allegations, ScaleFactor asserts eight causes of action against Defendants. (*Id.* at 22–44). Among those causes of action is a claim for violations of the Texas Uniform Trade Secrets Act, Tex. Civ. Prac. & Rem. Code §§ 134A.001 *et seq.* ("TUTSA"). (*Id.* at 27–31). Relevant to

1

the instant motion to dismiss are four other claims: (1) violations of the Harmful Access by Computer Act, Tex. Civ. Prac. & Rem. Code §§ 143.001 *et seq.* ("HACA"); (2) breach of fiduciary duty; (3) conversion; and (4) misrepresentation. (*Id.* at 37–44). Believing that ScaleFactor's TUTSA claim preempts these four claims, Defendants filed a motion to dismiss them under Federal Rule of Civil Procedure 12(b)(6). (Mot., Dkt. 17).

## II. LEGAL STANDARD

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338

(5th Cir. 2008) (citations and internal quotation marks omitted). A court may also consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). But because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Dorsey,* 540 F.3d at 338. "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

### III. DISCUSSION

The central issue presented by Defendants' motion is whether ScaleFactor's TUTSA claim preempts its four state-law tort claims.[1] TUTSA's preemption provision provides that the statute "displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret." Tex. Civ. Prac. & Rem. Code § 134A.007(a). Excepted from the provision are "contractual remedies" and "other civil remedies that are not based upon misappropriation of a trade secret." *Id.* § 134A.007(b)(1), (2).

The scope of TUTSA preemption is somewhat undeveloped; as this Court has previously observed, "[t]here is . . . little case law from Texas courts applying the statute's preemption provision." *Embarcadero Techs., Inc. v. Redgate Software, Inc.*, 1:17-CV-444-RP, 2018 WL 315753, at *2 (W.D. Tex. Jan. 5, 2018). But the purpose of TUTSA preemption is to "prevent inconsistent theories of relief for the same underlying harm by eliminating alternative theories of common law recovery which are premised on the misappropriation of a trade secret." *Id.* (quoting *Super Starr Int'l, LLC v. Fresh Tex Produce, LLC*, 531 S.W.3d 829, 843 (Tex. App.—Corpus Christi 2017, no pet.)).

---

[1] Defendants also complain that ScaleFactor's misrepresentation claim is too vague, (Mot., Dkt. 17, at 4), but the Court disagrees for the reasons given later in this order.

3

Consistent with that purpose, "[m]ost courts considering [the scope of TUTSA preemption] have determined [that the] UTSA was intended to preempt all claims based upon the unauthorized use of information." *Id.* (quoting *360 Mortgage Group, LLC v. Homebridge Financial Servs., Inc.*, No. A–14–CA–847–SS, 2016 WL 900577, at *8 (W.D. Tex. March 2, 2016)).[2] So, faced previously with the question of whether TUTSA preempts claims based on the unauthorized use of confidential information that was not a trade secret, this Court held that it does. *Id.* at *2–*4 (rejecting the contention that "a breach of fiduciary duty claim is not preempted by TUTSA when it alleges the improper taking of confidential information that does not qualify as a trade secret").

Taking the same approach to TUTSA preemption here, the Court finds that ScaleFactor's conversion and HACA claims are both preempted. ScaleFactor alleges that Sharrow and Millet destroyed and copied company data before leaving. (Compl., Dkt. 1, at 15–16, 18–19). Before his termination, Sharrow allegedly performed a "factory reset" of his laptop, rendering the data on the laptop "permanently unrecoverable." (*Id.* at 15). It is not alleged that all such data was trade secret information. (*See id.*). Millet, meanwhile, copied company documents to a personal hard drive, some of which included trade secret information. (*Id.* at 18). He later destroyed that hard drive. (*Id.* at 19). Finally, Sharrow and Millet are each alleged to have deleted documents from ScaleFactor's server and emails from his corporate account. (*Id.* at 15, 18). The deleted documents and emails are alleged to contain company information but not necessarily trade secrets. (*See id.*).

ScaleFactor's conversion claim is based on these alleged acts of destruction and copying. (*See id.* at 39–40 ("Sharrow and Millet are liable to ScaleFactor for conversion of ScaleFactor's property due to their unauthorized destruction, copying, and retention of ScaleFactor property")). According to ScaleFactor, Sharrow and Millet unlawfully assumed control over ScaleFactor property

---

[2] At least one Texas appellate court has looked to other state courts' analysis of their state's instantiation of the Uniform Trade Secrets Act as "instructive" of TUTSA's interpretation. *Super Starr*, 531 S.W.3d at 843.

4

by wiping Sharrow's laptop, copying Millet's documents to his hard drive, and deleting their emails. (*Id.* at 39).[3] ScaleFactor argues that these actions constitute conversion and argues that some of the converted property is "entirely independent from the trade secrets at issue" in this case. (Resp., Dkt. 28, at 8; *see also* Compl. Dkt. 1, at 39). But as the Court found in *Embarcadero*, a tort claim is preempted by TUTSA if it is "based on the unauthorized use of information"—trade secret or not. *Embarcadero*, 2018 WL 315753, at *2 (quoting *360 Mortgage Group*, 2016 WL 900577, at *8). And here, ScaleFactor's conversion claim is fundamentally concerned with the unauthorized acquisition (and later destruction) of company information, some but not all of which is trade-secret. (*See* Compl., Dkt. 1, at 25 (alleging that "Sharrow's deliberate destruction of all data residing on his company laptop is evidence of his misappropriation of ScaleFactor's trade secrets")). Indeed, ScaleFactor alleges that its conversion damages include the "loss of confidential, proprietary, and trade secret information." (*Id.* at 40). Because ScaleFactor's TUTSA and conversion claims each "stem from the same underlying harm—the taking of [ScaleFactor's] confidential information"—its conversion claim is preempted by TUTSA. *Embarcadero*, 2018 WL 315753, at *3.

The same is true for ScaleFactor's HACA claim. Like ScaleFactor's conversion claim, its HACA claim is based on Sharrow and Millet's destruction or copying of company data. ScaleFactor alleges that the defendants "accessed ScaleFactor's computers . . . for the purpose of destroying ScaleFactor's information, unauthorized copying and retention of ScaleFactor's information, and misappropriation of ScaleFactor's confidential, proprietary, and trade secret information." (Compl., Dkt. 1, at 39). It clarifies that Sharrow and Millet's access to its computer network was "not for the purpose of permitting [them] to destroy, copy, retain, and misappropriate ScaleFactor's confidential,

---

[3] "The elements of a conversion claim are (1) the plaintiff owned or had possession of the property or entitlement to possession; (2) the defendant unlawfully and without authorization assumed and exercised control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner; (3) the plaintiff demanded return of the property; and (4) the defendant refused to return the property." *Cypress Creek EMS v. Dolcefino*, 548 S.W.3d 673, 684 (Tex. App.—Houston [1st Dist.] 2018, pet. denied).

5

proprietary, trade secret, or other information." (*Id.*). Like its conversion claim, ScaleFactor's HACA damages include the "loss of confidential, proprietary, and trade secret information." (*Id.*). Once again, the harm stemming from this claim and ScaleFactor's TUTSA claim is the same: "the taking of [ScaleFactor's] confidential information." *Embarcadero*, 2018 WL 315753, at *3. Like its conversion claim, ScaleFactor's HACA claim is preempted by TUTSA.[4]

ScaleFactor's breach-of-fiduciary-duty and misrepresentation claims are more complicated. In its complaint, ScaleFactor characterizes its fiduciary-duty claim as being based partly on the use of ScaleFactor's trade secrets and partly on other conduct. For example, ScaleFactor alleges that Sharrow and Millet breached their fiduciary duties in part by wiping Sharrow's laptop, copying data onto Millet's hard drive, and deleting documents and emails. (Compl., Dkt. 1, at 42). Were that the only conduct forming the basis of ScaleFactor's fiduciary-duty claims, they would be preempted for the same reasons that its HACA and conversion claims are. But ScaleFactor also alleges that Sharrow and Millet breached their duties to the company by "act[ing] for their own interests" by "creat[ing] a directly competitive business" while working for ScaleFactor. (*Id.* at 41). This allegation is not based on the unauthorized use of information, and therefore, ScaleFactor's breach-of-fiduciary-duty claim is not preempted by TUTSA to the extent that it is based on this allegation. *See Trueblue, Inc. v. DeRuby*, 3:18-CV-0192-M, 2018 WL 1784523, at *2 (N.D. Tex. Apr. 13, 2018) (finding that a breach-of-fiduciary-duty claim was not preempted by TUTSA when the plaintiff

---

[4] In its response to Defendants' motion, ScaleFactor offers only a single sentence to contest HACA preemption: it points out that some facts relevant to its HACA claim are "separate and independent" from its trade secrets claims. (Resp., Dkt. 28, at 3). That position is both untrue and irrelevant. It is untrue that allegations about Sharrow and Millet "access[ing] ScaleFactor's computers and destroy[ing] ScaleFactor's data," (*id.*), are independent from ScaleFactor's trade secrets claims because ScaleFactor alleges those facts to be evidence of its trade secrets claims. (*See* Compl., Dkt. 1, at 25 ("Sharrow's deliberate destruction of all data residing on his company laptop is evidence of his misappropriation of ScaleFactor's trade secrets.")). It is irrelevant because preempted tort claims, which necessarily have different elements than TUTSA claims, will typically have *some* facts that do not form the basis of a trade-secrets claim. A conversion claim, for example, will require proof that the plaintiff demanded return of the property and that the defendant refused. *See Cypress Creek EMS*, 548 S.W.3d at 684. Those facts would be "separate and independent" from a trade-secrets claim, but conversion claims may nonetheless be preempted when they are otherwise based on the misappropriation of trade secrets. *See 360 Mortgage Group*, 2016 WL 900577, at *7–*8.

6

allegedly worked for a competitor while still employed by the plaintiff). In its response, ScaleFactor argues that allegations appearing elsewhere in its complaint, such as Sharrow and Millet "failing to make progress on Flightpath," also constitute violations of their fiduciary duties. (Resp., Dkt. 28, at 4). A breach-of-fiduciary-duty claim based on this allegation (to take one example) would not be preempted by TUTSA because it is not based on the unauthorized use of information. ScaleFactor's breach-of-fiduciary-duty claim is therefore not wholly preempted, both as currently stated and as it might be amended. It is preempted only insofar as it relies on allegations that Sharrow and Millet deleted or copied company information or misappropriated trade secrets. The Court will therefore only dismiss this claim in part, to the extent it is preempted, and will permit ScaleFactor to amend this claim to clarify the non-preempted bases for it.[5] *See Lyn–Lea Travel Corp. v. Am. Airlines*, 283 F.3d 282, 286 (5th Cir. 2002) ("[Rule 15(a)] requires the trial court to grant leave to amend freely, and the language of this rule evinces a bias in favor of granting leave to amend.") (citation and quotation marks omitted).

Likewise, ScaleFactor's misrepresentation claim is based in part on the misappropriation of trade secrets, but only superficially. Sharrow and Millet each signed stock-option agreements, under which they are entitled to exercise stock options under certain conditions. (Compl., Dkt. 1, at 13). One of those conditions is that they not engage in "misconduct," which is contractually defined to include both the misappropriation of trade secrets and any breach of their employment contracts. (*Id.*). ScaleFactor alleges that by exercising their stock options, they fraudulently misrepresented that they had not committed "misconduct" as defined in their stock-option agreements. (*Id.* at 43–44). Such alleged misconduct includes not only Sharrow and Millet's "actions in misappropriating ScaleFactor's trade secrets" but also other violations of their employment contracts, such as "working in concert to lay the foundation for Process Pro while employed by ScaleFactor." (*Id.* at

---

[5] ScaleFactor requests leave to amend its complaint in its response to Defendants' motion. (Resp., Dkt. 28, at 1 n.1).

43).[6] More to the point, the basis of ScaleFactor's misrepresentation claim is not the taking of ScaleFactor's confidential information but the lying about it. Because this claim is based on facts—lying about their compliance with their contract, which included conduct unrelated to trade secrets—other than those which form the basis of ScaleFactor's trade secrets claim, it is not preempted by TUTSA.

## IV. CONCLUSION

For these reasons, **IT IS ORDERED** that Defendant's motion to dismiss, (Dkt. 17), is **GRANTED IN PART**. The motion is granted insofar as:

1. ScaleFactor's claims for conversion and violations of the HACA are **DISMISSED WITH PREJUDICE**; and

2. Its claim for breach of fiduciary duty is **DISMISSED IN PART**, to the extent that it relies on allegations that Sharrow and Millet deleted or copied company information or misappropriated trade secrets.

ScaleFactor may amend its complaint with respect to its breach-of-fiduciary duty claim on or before **August 1, 2019**.

Defendants' motion is otherwise **DENIED**.

**SIGNED** on June 28, 2019.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

---

[6] Defendant's motion to dismiss ScaleFactor's misrepresentation claim pursuant to Federal Rule of Civil Procedure 9(b), (Mot., Dkt. 17, at 4), is denied. For fraud claims, "Rule 9(b) 'the who, what, when, where, and how' to be laid out.'" *Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1032 (5th Cir. 2010) (quoting *Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003)). ScaleFactor's complaint does so: it alleges that Sharrow and Millet misrepresented their compliance with their stock-option agreements when they exercised their options to purchase company stock. That suffices to lay out the who, what, where, and how of the alleged fraud.